# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN BERRON | ) |
| Plaintiff, | ) Civil Action No. 14 CV 2839 |
| v. | ) Hon. Charles R. Norgle |
| ILLINOIS CONCEALED CARRY LICENSING REVIEW BOARD, et al., | ) |
| Defendants. | ) |

## OPINION AND ORDER

John Berron ("Plaintiff") applied for a concealed carry license under the Illinois Firearm Concealed Carry Act, 430 Ill. Comp. Stat. 66/1 *et seq.* (or "the Act"), and his application was denied. In response, he filed this lawsuit against the Illinois Concealed Carry Licensing Review Board (the "Board"), an Illinois administrative agency; Robinzina Bryant, Chair of the Illinois Concealed Carry Licensing Review Board; Sergio Acosta, James Cavenaugh, Patrick John Chesley, John Diwik, Patrick G. Murphy, and Virginia Wright, Members of the Illinois Concealed Carry Licensing Review Board; the Illinois State Police, an Illinois law enforcement agency (the "Department"); Hiram Grau, Director of the Illinois State Police; Jessica Trame, Firearm Services Bureau Chief for the Illinois State Police; the Village of Skokie, an Illinois municipal corporation; and Anthony Scarpelli, Skokie Chief of Police (collectively, "Defendants"). Before the Court are Defendants' motions to dismiss Plaintiff's Complaint pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). For the following reasons, the motions are granted and the case is dismissed.

# I. BACKGROUND[1]

Until December of 2012, Illinois outright banned its citizens from carrying loaded, uncased guns outside their homes. It was the last state in the United States to have such a ban. Illinois' gun ban stood until December 11, 2012, when the Seventh Circuit found that the Illinois Unlawful Use of Weapons (UUW) and the Illinois Aggravated Unlawful Use of a Weapon (AUUW) statutes violated the Second Amendment of the United States Constitution. Moore v. Madigan, 702 F.3d 933, 942 (7th Cir. 2012). The Seventh Circuit stayed its decision for "180 days to allow the Illinois legislature to craft a new gun law that will impose reasonable limitations, consistent with the public safety and the Second Amendment…on the carrying of guns in public." Id.

On July 9, 2013, Illinois promulgated the Illinois Firearm Concealed Carry Act, which implemented new procedures for its citizens to apply for concealed carry licenses. See 430 Ill. Comp. Stat. 66/1 *et seq*. Under Section 10 of the Act, the Illinois State Police "shall issue a license" whenever an applicant:

(1) meets the qualifications of Section 25 of this Act;

(2) has provided the application and documentation required in Section 30 of this Act;

(3) has submitted the requisite fees; and

(4) does not pose a danger to himself, herself, or others, or a threat to public safety as determined by the Concealed Carry Licensing Review Board in accordance with Section 20.

Id. 66/10(a).

---

[1] The following facts are taken from Plaintiff's Complaint; the Court is "required to accept as true all facts alleged" therein for the purpose of deciding motions to dismiss. Gillman v. Burlington N. R.R. Co., 878 F.2d 1020, 1022 (7th Cir. 1989).

Plaintiff, who resides in Skokie, Illinois, submitted his application for a concealed carry license on January 5, 2014. He met the qualifications of Section 25—he is over twenty-one years of age; he has a valid Firearm Owner's Identification Card; he did not have a record of any of the criminal convictions listed in the statute; he was not subject to a pending arrest warrant, prosecution, or other disqualifying proceeding; he was not enrolled in a drug or alcohol treatment program; and he had completed the requisite firearm training. He submitted a complete application along with the documentation required by Section 30. He also submitted the requisite fees, totaling $150. However, Plaintiff was denied a license because the Board determined that he posed a danger and he did not meet the fourth requirement under Section 10 of the Act.

The Act permits any law enforcement agency to object to an applicant's licensure "based upon a reasonable suspicion that the applicant is a danger to himself or herself or others, or a threat to public safety." 430 Ill. Comp. Stat. 66/15(a). During the review of Plaintiff's application, "a law enforcement agency" objected to the Board about his eligibility for a license. Compl., Ex. A at 1. Plaintiff then received a letter on March 19, 2014, explaining: "The Board has notified the Department that it ha[d] determined by a preponderance of the evidence that [Plaintiff] pose[d] a danger to [him]self or others/a threat to public safety," and his application was denied. Id. The Department also informed Plaintiff that he could "appeal the decision of the Board by petitioning in writing the circuit court in the county of [his] residence for a hearing on the denial." Id. The guidance in the letter is consistent with the judicial review provision in the Act. See 430 Ill. Comp. Stat. 66/87(a).

Before receipt of the denial letter, Plaintiff did not know that a law enforcement agency had objected to his application. Even after receipt of the letter, Plaintiff was not told which law enforcement agency objected or why the agency objected, and he was not given an opportunity

3

to respond to the objection before the denial. Plaintiff never saw, received, or knew what comprised the law enforcement agency's suspicion that he was dangerous. Plaintiff alleges, merely on "information and belief," that Anthony Scarpelli, acting on behalf of the Village of Skokie, filed a formal objection with regard to his application. Compl. ¶ 14. Plaintiff alleges that the composition of the Board "tend[s] toward bias" because it is composed of a majority of members with government law enforcement backgrounds instead of victims' rights advocates, counselors, or criminal defense attorneys. Id. ¶ 19d. However, Plaintiff does not allege that any of the Defendants harbored a specific bias towards him or acted in a random manner that was noncompliant or unauthorized by the Act.

Plaintiff filed his Complaint in this Court on April 21, 2014, and he filed a similar complaint arising from the same denial letter in the Circuit Court of Cook County on April 28, 2014.[2] In his Complaint before this Court, Plaintiff asserts three causes of action: he seeks a judgment finding that the Act is unconstitutional for failing to provide him with sufficient procedural due process (Count I); he seeks a judgment finding that the Act, on its face and as applied, is unconstitutional for imposing a prior restraint on his Second Amendment right (Count II); and he seeks further administrative review of the Board's determination that he poses a danger (Count III).

After Plaintiff filed this Complaint, the Illinois State Police implemented "Emergency Amendments" specifying how the Board will consider objections it receives from law enforcement agencies. 20 Ill. Admin. Code § 1231.230 (effective July 10, 2014). Under the new administrative regulations, if "an objection appears sustainable," the Board "shall send the applicant notice of the objection, including the basis of the objection and the agency submitting

---

[2] Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of the adjudicative facts that can be accurately and readily determined, in addition to, the facts alleged in Plaintiff's Complaint.

4

the objection, within ten calendar days." Id. at § 1231.230(e). An applicant may respond with "any additional material that the applicant wants [the Board] to consider." Id. If the matter "cannot be resolved through written communication with the parties," the Board may conduct a hearing wherein it "may request testimony at a hearing from a representative of the objecting law enforcement agency, from a representative of the Department, or from the applicant." Id. at § 1231.230(c). Before the Board conducts a hearing, the applicant will be notified with its date, time and location. Id. at § 1231.230(d).

On August 4, 2014, the State of Illinois Defendants filed a motion in state court to remand Plaintiff's case for further proceedings before the Department and the Board, in accord with the new Emergency Amendments. Defs. Reply in Support of Their Mot to Dismiss Ex. 1 at 3. No such motion to remand was filed in this Court. To date, neither Plaintiff nor Defendants have informed the Court of the status of the pending motion to remand.

## II. DISCUSSION

Defendants move to dismiss on three separate grounds. Defendants argue that Counts I and III of Plaintiff's Complaint should be dismissed on mootness grounds because they voluntarily requested to remand Plaintiff's case for further administrative review in state court. Defendants also contend that Counts I and III should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, on abstention grounds under Younger v. Harris, 401 U.S. 37 (1971) and Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). Lastly, Defendants argue that Counts I and II should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## A. Standard of Decision

A plaintiff's complaint "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). When reviewing a motion to dismiss under Rule 12(b)(1), courts "'accept as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff,' but a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell, 770 F.3d 586, 588-89 (7th Cir. 2014). "The district court may properly look beyond the jurisdictional allegations of the complaint to view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Long v. Shorebank Dev. Corp., 182 F.3d 548, 554 (7th Cir. 1999).

To avoid dismissal under Rule 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Courts accept "well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (citing Iqbal, 556 U.S. at 681).

## B. Defendants' Rule 12(b)(1) Motions to Dismiss

### 1. Whether Counts I and III of Plaintiff's Complaint are Moot

Federal courts only have jurisdiction to hear live cases and controversies. Damasco v. Clearwire Corp., 662 F.3d 891, 894 (7th Cir. 2011). That means that parties must "maintain a

personal stake in the outcome at all stages of the litigation." Id. at 895. "Therefore '[o]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake.'" Id. (quoting Rand v. Monsanto Co., 926 F.2d 596, 598 (7th Cir. 1991)).

Here, Plaintiff brought this suit in response to being denied a license to carry a concealed and ready-to-use firearm in Illinois. Defendants argue that Counts I and III are now moot, because they voluntarily moved to remand Plaintiff's case in state court for further administrative review. However, among the relief requested in his Count I procedural due process claim, Plaintiff requests "permanent injunctive relief directing Defendant Grau to issue a license under the Illinois Firearm Concealed Carry Act to [him]." Compl. ¶ 25. Even if the state court grants Defendants' pending motion to remand before the state court, Plaintiff could still be denied a concealed carry license without the process he is due. Defendants' motion falls short of an offer satisfying Plaintiff's entire demand in Count I. Accordingly, a live case and controversy still remains regarding Count I, and the issue is not moot.

In Count III, Plaintiff seeks relief under state law—the Illinois Administrative Review Law, 735 Ill. Comp. Stat. 5/3-102. Plaintiff requests that the March 19, 2014 decision be vacated and he be afforded further administrative review. Defendants' voluntarily motion to remand before the state court does just that. Defendants' motion before the state court requests that Plaintiff's case receive further administrative review pursuant to the Illinois Administrative Review Law, including the additional Emergency Amendments, which the Department implemented subsequent to the filing of Plaintiff's Complaint. Defendants' motion constitutes an offer that satisfies Plaintiff's entire demand in Count III. Plaintiff's argument that he intends to

7

object to Defendants' motion in state court is irrelevant. Accordingly, Count III of Plaintiff's Complaint is dismissed as moot.

### 2. Whether this Court should abstain from hearing Counts I and III of Plaintiff's Complaint

Defendants characterize the parallel state court proceeding as a civil enforcement action and argue that this Court should abstain from hearing Counts I and III of Plaintiff's case. However, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Colo. River Water Conservation Dist., 424 U.S. at 813. Likewise, "Circumstances fitting within the *Younger* doctrine, we have stressed, are 'exceptional.'" Sprint Communications, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013). The exceptional circumstances occur when the parallel state proceeding is akin to a criminal prosecution. Id. But none of the abstention exceptions apply in this case. The denial of Plaintiff's concealed carry license is not akin to a criminal prosecution; primarily, because Plaintiff initiated the administrative and judicial proceedings, the proceedings are not enforcement actions by the government. Plaintiff sufficiently pleads a federal question in his Complaint and established jurisdiction under 28 U.S.C. § 1331. Therefore, abstention is inappropriate here. "[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. (quoting Colo. River Water Conservation Dist., 424 U.S. at 817).

## C. Defendants' Rule 12(b)(6) Motions to Dismiss

### 1. Whether Plaintiff fails to state a claim upon which relief can be granted in Count I of his Complaint

The Court now turns to the issue of whether Plaintiff's Complaint sufficiently states a claim to survive Defendants' motion to dismiss under Rule 12(b)(6). In Count I, Plaintiff does not allege that the Act is unconstitutional for substantive due process reasons, and he does not

8

allege that he was deprived of procedural due process because Defendants' acts were "random and unauthorized." See Parratt v. Taylor, 451 U.S. 527, 540 (1981) (overruled by Daniels v. Williams, 474 U.S. 327, 330 (1986)). Rather, Plaintiff challenges the licensing provisions of the Act as written and argues that "the administrative rules themselves fail to provide the process due, this Court must judge them accordingly." Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss 4.

In the wake of District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. City of Chicago, 561 U.S. 742 (2010), states have struggled with striking the right balance between affording its citizens full enjoyment of their Second Amendment rights and implementing regulations on gun ownership that provide for the public's safety. Subsequent to the Supreme Court's decisions, the Moore Court struck down Illinois' outright ban on its citizens' ability to carry ready-to-use firearms in public, making it apparent that the proper balance includes the citizens' rights to bear arms outside the confines of their homes. 702 F.3d at 942. The Illinois legislature and executive agencies have been left to grapple with implementing statutes and regulations that comply with the protections of the United States Constitution.

Simply because Illinois has implemented new gun regulations, however, does not mean that the doctrine of due process is new. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of Due Process of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 333 (internal quotation and citation omitted). Typically, "all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547-48 (1985). Courts weigh three factors "in identifying the nature

of the process due in a given situation: 1) the nature of the private interest affected by the state action; 2) the risk of an erroneous deprivation together with the value, if any, of the imposition of additional procedural safeguards; and 3) the state's interest." Becker v. Ill. Real Estate Admin. & Disc. Bd., 884 F.2d 955, 958 (1989) (citing Eldridge, 424 U.S. at 335).

As a preliminary inquiry, the Court considers Plaintiff's constitutionally protected interest. Plaintiff does not allege that he is being deprived of life or liberty; he alleges that his "private interest in the matter is an individual right textually guaranteed to law-abiding citizens, such as him, by the Second Amendment to the United States Constitution, which applies to the Defendants through the Fourteenth Amendment thereto." Compl. ¶ 19a. However, "'[p]roperty interests, of course, are not created by the Constitution.'" Frey Corp. v. City of Peoria, Ill., 735 F.3d 505, 510 (7th Cir. 2013) (quoting Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972)). "A protected property right under the Fourteenth Amendment due process clause is something that 'is securely and durably yours under state (or…federal) law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain.'" Id. at 509 (quoting Reed v. Vill. of Shorewood, 704 F.2d 943, 948 (7th Cir. 1983)). For example, it is a significant loss of a private interest when the government deprives "a person of the means of livelihood." Loudermill, 470 U.S. at 543. Whereas, a license, such as a liquor license not directly associated with a person's livelihood, may not even be considered a protected property right. Frey Corp., 735 F.3d at 512.

Here, the Court finds that Plaintiff's protected property interest is the use of his property—his firearm. He lawfully owns a gun and obtained a valid Firearm Owner's Identification Card. However, he never obtained a concealed carry license. His right to use a gun outside of his home before and during his application was speculative and uncertain. Also,

Plaintiff's use of a firearm is not linked to his livelihood. Therefore, the Court finds that Plaintiff's private interest in carrying a concealed and ready-to-use firearm exists, but it is not significant.

Having found a constitutionally protected interest, the Court addresses the two remaining Eldridge factors. The Court finds that the risk that an erroneous deprivation might occur under the current procedural framework is unlikely. The Illinois State Police already implemented additional procedural regulations to address how the Board treats a law enforcement agency's objection to a person's concealed carry application. The applicant receives notice and has an opportunity to respond to the agency's objection. If the matter is not resolved, the applicant is notified of a predeprivation hearing at which he or she may be asked to appear and speak. Furthermore, the applicant may appeal the decision of the Department in state court. Plaintiff is afforded an opportunity to explain why he does not pose a danger to himself, others, or the general public.

Lastly, the Court finds that Illinois has a significant interest in the safety of its citizens and is acting reasonably to ensure that dangerous individuals are not permitted to carry concealed, loaded, and potentially deadly, firearms in public. Moreover, it is prudent of the State to delay the issuance of a concealed carry license until it is determined that Plaintiff, or any other applicant, is not dangerous and is qualified to carry a ready-to-use firearm. "Inherent in due process are the concepts of notice and opportunity to be heard prior to being deprived of a protected interest unless the state's interest in an immediate deprivation outweighs the individual's interest in a predeprivation hearing." Becker, 884 F.2d at 958 (citing Loudermill, 470 U.S. at 542). Based on the foregoing, the Court finds that the Act comports with constitutional notions of procedural due process.

Additionally, "[i]f a prior hearing cannot be achieved, and the 'real' hearing will come in court, a state court is as good as a federal court—better than the federal court if the real issue is how state and local governments carry out their missions under state law." Mid-Am. Waste Sys., Inc. v. City of Gary, Ind., 49 F.3d 286, 291 (7th Cir. 1995). Here, Plaintiff had an opportunity, which he exercised, to appeal the Department's decision in state court. After filing a complaint in state court, Defendants remanded his case for further administrative hearings regarding the denial of his license and whether he poses a danger to himself, others, or the general public. The additional administrative review is ongoing and the status of Plaintiff's concealed carry license is still pending. Plaintiff will have a hearing prior to the Department's decision to either issue or deny him a license. Indeed, he may prevail. Illinois' concealed carry licenses are created under state law. The licenses are issued by a state agency. The licenses are not validly used outside the state of Illinois. It follows, that Illinois courts are better suited to "hear how state and local governments carry out their missions under state law." Id. Whether Plaintiff is actually a danger remains to be seen. His opportunity to litigate that fact remains in state court. The process afforded to him throughout his application for a concealed carry license has far exceeded the constitutional requirements of what is due. Accordingly, Count I is dismissed.

### 2. *Whether Plaintiff fails to state a claim upon which relief can be granted in Count II of his Complaint*

In Count II, Plaintiff alleges that the Act imposes an unconstitutional prior restraint on his Second Amendment right to bear arms outside of his home. Defendants argue that, as alleged, such a claim fails to state a claim upon which relief can be granted. The Court agrees.

In Kachalsky v. County of Westchester, 701 F.3d 81 (2d Cir. 2012), plaintiffs were five individuals who applied for a concealed carry license in New York, but were denied. They too argued that the concealed carry laws in New York imposed an unconstitutional prior restraint on

their rights protected by the Second Amendment. They argued that the court should "apply the First Amendment prior-restraint analysis in lieu of means-end scrutiny to assess the proper cause requirement." Id. at 91. The Second Circuit reasoned that "it would be imprudent to assume that the principles and doctrines developed in connection with the First Amendment apply equally to the Second." Id. at 92. The Kachalsky Court found that no court has "import[ed] *substantive* First Amendment principles wholesale into Second Amendment jurisprudence." Id. at 91 (emphasis in the original). This Court declines to be the first. Therefore, as a matter of law, Plaintiff fails to state a claim upon which relief could be granted and Count II is dismissed.

### III. CONCLUSION

In summary, Plaintiff's Count I-Procedural Due Process claim is dismissed under Rule 12(b)(6) for failure to state a claim. Plaintiff's Count II-Prior Restraint claim is also dismissed for failure to state a claim. And Plaintiff's Count III-Administrative Review claim is dismissed under Rule 12(b)(1) as moot. The case is terminated.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: March 16, 2015